## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### DOCKET NO. 3:15-CV-229-FDW

| | |
|---|---|
| **KIMBERLY M. CARROLL,**      ) | |
|                         ) | |
|     **Plaintiff,**            ) | |
|                         ) | |
| **vs.**                           ) | |
|                         ) | **ORDER** |
| **CAROLYN W. COLVIN,**     ) | |
| **ACTING COMMISIONER OF SOCIAL**   ) | |
| **SECURITY,**            ) | |
|                         ) | |
|     **Defendant.**          ) | |
|                         ) | |

**THIS MATTER** is before the Court on Plaintiff Kimberly M. Carroll's Motion for Summary Judgment (Doc. No. 11) and Defendant Acting Commissioner of Social Security Carolyn W. Colvin's Motion for Summary Judgment. (Doc. No. 17). Plaintiff, through counsel and on behalf of Kimberly M. Carroll, seeks judicial review of an unfavorable administrative decision on Ms. Carroll's claim for Disability Insurance Benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reason set forth below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and the Administrative Law Judge's decision is AFFIRMED.

## I.      BACKGROUND

On March 13, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Doc. No. 10-6, p. 181-184). Additionally, Plaintiff filed a Title XVI application for supplemental security income. (Doc. No. 10-6, p. 185-190). In both applications, Plaintiff alleges a period of disability beginning on October 15, 2010. (Doc. No. 10-

1

6, pp. 181, 185).  Plaintiff alleges that she was disabled due to Buerger's disease, obesity, osteoarthritis, degenerative disc disease, and carpel tunnel syndrome.  (Doc. No. 10-7, p. 266). Plaintiff's applications were initially denied on April 5, 2012, and also denied on June 18, 2015 on reconsideration.  (Doc. No. 10-4, pp. 83, 108-109).

Plaintiff timely filed a request for hearing on August 20, 2012.  (Doc. 10-5, p. 135).  On December 3, 2013, Administrative Law Judge ("ALJ") Daniel J. Driscoll conducted a hearing from Boston, Massachusetts.  (Doc. No. 10-3, p. 32).  The ALJ denied Plaintiff's claim in a written decision dated December 26, 2013, in which he concluded that, pursuant to the sequential evaluation process, Plaintiff was not disabled within meaning of the Social Security Act.  (Doc. No. 10-3, pp. 12-24).  Plaintiff requested a review of the hearing on January 28, 2014.  (Doc. No. 10-3, p.8).  Her request was denied by the Appeals Council on March 24, 2015.  (Doc. No. 1, 1).

Plaintiff filed the present action on May 5, 2015, (Doc. No. 1, pp. 1-3), and the parties' Motions for Summary Judgment are now ripe for review pursuant to 42 U.S.C. § 405 (g).

## II.     STANDARD OF REVIEW

42 U.S.C. § 405(g) authorizes judicial review of the Commissioner's final decision in social security cases and limits this Court's consideration to (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)), and which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  District courts do not review a final

decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Rather, a reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d, p. 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d, p. 1456.

The issue before this Court, therefore, is not whether Plaintiff is disabled, but whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of relevant law.

### III. ANALYSIS

The question before the Court is whether substantial evidence supports ALJ Driscoll's decision that Plaintiff was not "disabled"[1] within the meaning of 42 U.S.C. §§ 416(i), 423(d), 1382c, between the onset date of October 15, 2010, and the date of his decision. To set aside the final decision of an ALJ, Plaintiff bears the burden to prove the ALJ's decision on the question of disability is not supported by substantial evidence. Hays, 907 F.2d, p. 1456.

The Social Security Administration ("SSA") uses a five step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520, for determining disability claims. If a claimant is found to be disabled or not disabled at any step, the inquiry ends and the adjudicator does not proceed further

---

[1] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301, et seq., as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

in the process. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work; and, if unable to perform the requirements of past relevant work, (5) whether the claimant is able to adjust to other work, considering her residual functional capacity and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, considering her residual functional capacity and vocational factors, the ALJ will find her not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).

The claimant bears the burden of production and proof during the first four steps of the inquiry. Pass, 65 F.3d, p. 1203. If she is able to carry this burden, the burden shifts to the Commissioner to show that other work is available in the national economy which the claimant could perform. Id.

On December 26, 2013, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Doc. No. 10-3, pp. 1-25). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity as set forth in the statute since the date of her application, March 13, 2012, through the date of the ALJ's decision. (Doc. No. 10-3, pp. 17-25). At step two, the ALJ found that Plaintiff had the following severe impairments: Buerger's disease, obesity, carpal tunnel disease, osteoarthritis, and degenerative disc disease. (Doc. No. 10-3, p. 17). At step three, the ALJ determined that none of Plaintiff's impairments met or were medically equivalent to any of the impairments listed in 20 C.F.R. pt. 404, subpart P, appendix 1.

(Doc. No. 10-3, pp. 17-18). The ALJ then calculated Plaintiff's RFC, concluding that Plaintiff retained the RFC to perform sedentary work with the option to alternate between sitting and standing without the positional change rendering her off-task. (Doc. No. 10-3, p. 19). The ALJ further determined that Plaintiff was limited to routine tasks with no detailed instruction. Id. The ALJ further determined that Plaintiff was unable to perform the requirements of past relevant work. (Doc. No. 10-3, p.24). Lastly, in considering step five, the ALJ found that Plaintiff was capable of performing work that existed in significant numbers in the national economy. Id.

On appeal, Plaintiff presents the following assignments of error: (1) the ALJ failed to provide a complete function-by-function analysis of the nonexertional mental functions associated with Plaintiff's difficulties in the broad areas of functioning; (2) the ALJ conducted an incomplete and inaccurate function-by-function analysis of Plaintiff's exertional limitations; and (3) the ALJ failed to provide valid reasons for finding Plaintiff's testimony not credible.

Turning to the arguments in this case, the Court has reviewed the pleadings and briefs and addresses Plaintiff's assignments of error below.

## A. Function-by-function Analysis of Nonexertional Limitations in RFC Finding

Plaintiff argues, first, that inconsistent with procedure and precedent, the ALJ failed to account in the RFC "for his own moderate difficulties findings." (Doc. No. 12, pp. 5-7). Specifically, Plaintiff argues that the ALJ did not follow procedure when, despite having found moderate difficulties in the areas of daily living and in concentration, persistence, or pace, the ALJ did not perform the function-by-function analysis required by SSR 96-8p. Id.; 1996 WL 374184, at *1. Moreover, Plaintiff argues that based on new precedent set forth in Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), the ALJ's failure to address "pace" or explain with specificity why a limitation to activities with "no detailed instructions" accounts for Plaintiff's difficulties requires

remand. (Doc. No. 12, pp. 8-9). Plaintiff also contends that the ALJ ignored the vocational expert's ("VE") testimony that being off task occasionally would preclude employment. (Doc. No. 12, p. 10).

20 C.F.R. §§ 404.1520a(c)(2) and 416.920(a) provide a process through which to evaluate mental impairments. First, an ALJ should rate the degree of severity of a claimant's functional difficulties in four broad areas of functioning: (a) activities of daily living, (b) social functioning, (c) concentration, persistence, or pace, and (d) areas of decompensation. 20 C.F.R. §§ 404.1520a(c)(2), 416.920(a). If the degree of difficulty is moderate or greater for the first three functions, or mild or greater for the final function, an ALJ must then "consider and evaluate functional consequences of the mental disorder(s) relevant to [a claimant's] ability to work." 20 C.F.R § 404.1520a(a)(2). To do so, the ALJ must "assess [a claimant's] work-related abilities on a function-by-function basis . . . ." SSR 96-8p, 1996 WL 374184, at *1. Basic nonexertional work abilities include "understanding, remembering, and carrying out instructions," "responding appropriately to supervision, co-workers, and work pressures in a work setting," "use of judgment," and "dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1545(c), 404.1521(a). Only after the ALJ determines the claimant's work abilities related to these broad functions may the RFC be expressed in terms of the exertional levels of work. SSR 96-8p, 1996 WL 374184, at *1.

Although an ALJ must include a narrative discussion describing how evidence supports his conclusion, citing to specific medical and non-medical facts, id. at *7, the Fourth Circuit has "rejected a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Mascio, 780 F.3d at 666. Remand may be appropriate "where other inadequacies in the ALJ's analysis frustrate meaningful review" or the Court is "left to guess about

how the ALJ arrived at his conclusions . . . ." Id. at 636-37, (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Mascio provides several examples of inadequacies that require remand. First, "[a]n ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Id. at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). In addition, an ALJ's conclusion that a claimant can perform certain functions despite moderate difficulties in concentration, persistence, and pace is incomplete without also addressing the plaintiff's ability to perform those functions for a full work day. Id. at 637.

The Court finds that the ALJ did not fail to account in the RFC "for his own moderate difficulties findings," as contended by Plaintiff. (Doc. No. 12, p.5) Plaintiff correctly states the procedure prescribed by SSR 96-8p, 1996 WL 374184, at *1, and notes that the ALJ failed to perform a function-by-function analysis. (Doc. No. 12, pp. 5-8). In other words, Plaintiff acknowledges that the ALJ properly found moderate difficulties in the area of concentration, performance, or pace and in the area of daily living. Id. However, Plaintiff asserts that the ALJ failed to then expressly consider how those difficulties would affect Plaintiff's ability to perform basic work functions like the ability to understand, remember, and carry out instructions. Id. Plaintiff contends that this failure requires remand. Id. However, Mascio expressly rejected a per se rule requiring remand when an ALJ fails to perform a function-by-function analysis. 780 F.3d at 66. Rather, remand becomes necessary where the lack of analysis prevents meaningful review. Id. at 636. That is not the case here.

With respect to Plaintiff's moderate difficulties in the broad area of daily living, the ALJ's analysis does not leave the Court to wonder at how he reached his conclusion that Plaintiff could perform sedentary work, and his conclusion is supported by substantial evidence. (Doc. No. 10-

3, pp. 20-21, 23). Although Plaintiff's claimed that she needed to lie down "multiple times per day" and could not complete basic household chores because her pain and fatigue, the ALJ concluded that "the evidence of record provid[ed] little support for these allegations." (Doc. No. 10-3, p. 23). The ALJ cited first Plaintiff's own report of only moderate interference with daily activities. Second, the ALJ noted that Plaintiff's treating physician had opined that Plaintiff could perform full-time, sedentary work. (Doc. No. 10-3, p. 20-21). Finally, despite Plaintiff's use of medication to "address her sleeping difficulties," the ALJ concluded that there was "little support within the evidence for finding that the claimant requires multiple naps per day to address her fatigue symptoms." Thus, the ALJ's conclusion that Plaintiff's difficulty in daily living was moderate but did not preclude sedentary work was based on substantial evidence.

Similarly, the ALJ's treatment of Plaintiff's moderate limitations in concentration, persistence, and pace is sufficient to permit meaningful review. The ALJ noted that Plaintiff suffers from chronic pain and that it is reasonable that her pain and need for narcotic pain medication would affect concentration, persistence, and pace. Id. The ALJ thus concluded that Plaintiff was limited to tasks with no detailed instructions. Id. In the same paragraph, the ALJ concluded that because Plaintiff's long-time physician opined that Plaintiff could perform full time work, "Plaintiff could perform unskilled work in this setting and maintain appropriate persistence or pace in a work setting." Id. Having spoken directly to pace and persistence, it becomes clear that although the ALJ failed to expressly state that pain and pain medication affect concentration and consequently Plaintiff's ability to understand, remember, and carry out instructions, the "no detailed instruction" limitation specifically addresses Plaintiff's concentration.

Finally, Plaintiff argues that the ALJ erred in rejecting the VE's testimony that a person being occasionally off task would preclude employment. At the hearing, the ALJ asked the VE if

a hypothetical person who, "due to a combination of impairments, would require unscheduled breaks, or be inattentive to work duties, to such an extent that the person would be off task . . . one third of a workday" could perform jobs in the regional or national economy. (Doc. No. 10-3, p. 70). The VE replied that such a person could not. Id. Plaintiff contends that the ALJ ignored this testimony without explanation.

The court in <u>Mascio</u> found that the ALJ must consider all aspects of the RFC in creating a hypothetical to give to the vocational expert and must explain limitations in concentration, persistence and pace independently from a limitation to simple, routine, repetitive tasks. <u>Mascio</u>, 780 F.3d at 637-38. Thus, a hypothetical is incomplete if the ALJ fails to account for a relevant factor when determining Plaintiff's residual functional capacity. Id. However, it is well settled that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." <u>Walker v. Bowen</u>, 889 F.2d 47, 50-51 (4th Cir. 1989) (citing <u>Chester v. Mathews</u>, 403 F.Supp. 110 (D.Md. 1975); <u>Stephens v. Sec'y of Health, Educ. & Welfare</u>, 603 F.2d 36 (8th Cir. 1979)). Conversely, a hypothetical based on impairments contradicted by evidence in the record may be neither relevant nor helpful. See <u>id.</u>

Here, the ALJ did not err in ignoring this testimony because substantial evidence supported the ALJ's finding that the hypothetical limitations were not analogous to those of the Plaintiff. As noted above, unlike the hypothetical claimant who would be off task up to one-third of the workday, here the ALJ found Plaintiff able to stay on task, and substantial evidence supports the ALJ's finding. (Doc. No. 10-3, p. 20-23). The ALJ noted that Plaintiff's long-term physician opined that Plaintiff could engage in full-time sedentary work. (Doc. No. 10-3, p. 23). The ALJ further noted that the record lacked any indication that Plaintiff's anti-coagulant therapy

necessitated excessive breaks or absences in the workplace setting.  (Doc. No. 10-3, p. 22).  In addition, despite Plaintiff's claims that she has to lie down multiple times per day, the ALJ cited to Plaintiff's own report of only moderate interference with daily activities.  Id.  The ALJ thus concluded that Plaintiff could engage in full-time sedentary work and could do so with appropriate persistence and pace.  (Doc. No. 10-3, p. 23).  As such, the ALJ was not required to consider the work ability based of a person whose limitations were greater than the evidence of record demonstrated the limitations of the Plaintiff to be.  The ALJ's hypothetical therefore matched the ALJ's finding regarding Plaintiff's residual functional capacity.

In sum, the ALJ did not fail to account in the RFC for Plaintiff's moderate nonexertional difficulties in the areas of daily living and concentration, pace or persistence.  The ALJ sufficiently explained his finding that difficulties in the area of daily living did not preclude sedentary work, adequately addressed Plaintiff's ability to perform limited tasks persistently and at pace for an entire workday, included a limitation to compensate for Plaintiff's difficulty concentrating, and properly excluded a hypothetical which did not accurately reflect Plaintiff's nonexertional limitations.  Thus, the ALJ's analysis is sufficient for this Court to conduct a meaningful review which reveals that the ALJ's findings were supported by substantial evidence.  Therefore, the ALJ's decision will not be disturbed.

### B.       Function-by-function Analysis of Exertional Limitations

Plaintiff also argues that the ALJ conducted an incomplete and inaccurate function-by-function analysis of Plaintiff's exertional limitations.  (Doc. No. 12, pp. 11-15).  Plaintiff first argues that the ALJ erred in excluding from the RFC Dr. Neal's opinion limiting Plaintiff to only one to two hours of standing and walking in an eight-hour day.  (Doc. No. 12, pp. 11-13; Doc. No. 10-15 p. 976).  Next, Plaintiff contends that the ALJ failed to include in the hypothetical posed to

the VE the same stand/walk limitation, Plaintiff's use of a cane, and the specific frequency with which Plaintiff would be required to alternate between sitting and standing. (Doc. No. 12, pp. 12-15).

Plaintiff argues that the RFC, which limits Plaintiff to sedentary work, is in conflict with Dr. Neal's opinion that Plaintiff could stand and walk for one to two hours per day. (Doc. No. 12, pp. 11-13). Plaintiff contends that because the ALJ purported to give great weight to Dr. Neal's opinion, this omission was in error. Id. As defined by the regulations, "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567. "'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than [two] hours of an [eight]-hour workday." SSR 96-9p, 1996 WL 374185, at *3.

Here, substantial evidence supports the RFC for sedentary work, and the RFC is not inconsistent with Plaintiff's treating physician's opinion. The ALJ relied on Dr. Neal, who opined that Plaintiff could stand and walk, with normal breaks, for one to two hours in an eight-hour workday. (Doc. No. 10-3, p. 21). The ALJ explained his reliance on Dr. Neal's functional capacity evaluation, stating that as Plaintiff's long-term treating physician, Dr. Neal is in the best position to provide a reliable assessment of Plaintiff's functional limitations from Plaintiff's physical impairments. (Doc. No. 10-3, p. 21). Sedentary work, which requires no more than two hours of standing and walking is not inconsistent with Dr. Neal's assessment that Plaintiff could stand and walk for one *to* two hours a day. Id. Therefore, the RFC did not fail to incorporate Dr. Neal's opinion, and it is supported by substantial evidence.

The Plaintiff argues that for the same reasons, the ALJ omitted Dr. Neal's proposed stand/walk limitation from the hypothetical the ALJ posed to the VE. (Doc. No. 12, p. 12). The

Fourth Circuit provided in <u>Walker v. Bowen</u>, "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." 889 F.2d at 50-51 (citations omitted). Nevertheless, the hypothetical need not exactly match the language contained in the RFC finding. <u>See</u> <u>Johnson v. Barnhart</u>, 434 F.3d 650, 659 (4th Cir. 2005). Rather, the ALJ has some discretion in constructing hypothetical questions to communicate a claimant's limitations to the VE. <u>Id.</u> The ALJ's RFC determination will not be disturbed if its hypothetical questions "adequately reflect" the plaintiff's RFC as supported by substantial evidence. <u>Id.</u>

Here again, the ALJ relied on substantial evidence when phrasing the hypothetical to the VE, which did not fail to incorporate Dr. Neal's opinion. The ALJ proposed a hypothetical person who is able to perform sedentary work with an additional limitation that the person must alternate between sitting or standing without rendering the person off task. (Doc. No. 10-3, p. 68). As explained previously, "sedentary" work is consistent with Dr. Neal's opinion that Plaintiff could walk and stand one-to-two hours per day. Therefore, the hypothetical adequately reflects Plaintiff's RFC, which incorporates Dr. Neal's opinion and is supported by substantial evidence.

Next, Plaintiff argues that the ALJ erred in excluding Plaintiff's use of a cane from the hypotheticals presented to the VE. (Doc. No. 12, p. 13). SSR 96-9p states the occupational base may be significantly eroded for one who must use an assistive device for balance because of significant involvement of both lower extremities. 1996 WL 374185, at *7 (Jul. 2, 1996). An ALJ may exclude a claimant's limitation from a posed hypothetical if the ALJ finds the limitation does not affect the claimant's ability to work. <u>Mascio</u>, 780 F.3d at 638.

The ALJ did not err in excluding Plaintiff's use of a cane from the hypothetical because substantial evidence supports the ALJ's finding that Plaintiff's did not require a cane for assistance in ambulating or suffer from a problem impacting both of her legs. With respect to Plaintiff's legs, the ALJ noted that following a left femoral artery bypass to address chronic pain in her left lower extremity, Plaintiff complained of aching and weakness in both legs, which was aggravated by walking and standing. (Doc. No. 10-3, p. 20). However, the ALJ also considered that Plaintiff "only reported moderate interference with her daily activities because of her leg symptoms," "non-invasive vascular studies showed essentially normal pressure in each leg, and Dr. Neal did not feel there was much to improve in this regard." Id. Considering Plaintiff's use of a cane, the ALJ acknowledged that Plaintiff's physician had noted Plaintiff's use of a cane to ambulate, but concluded that Plaintiff was ambulatory and able to perform daily tasks. Id. Substantial evidence thus supports the ALJ's conclusion that Plaintiff did not use her cane for balance or because of significant involvement of both extremities. Therefore, the ALJ therefore properly excluded Plaintiff's use of the cane from the hypothetical posed to the VE.

Lastly, Plaintiff contends that failure to include the frequency with which Plaintiff would be required to alternate between sitting and standing in the hypothetical to the VE was in error. SSR 83-12 directs the agency to consult with a VE to assess the impact the sit/stand option has on the occupation base. 1983 WL 31253, *1, *4 (January 1, 1983); Walls v. Barnhart, 296 F.3d 287, 291 (4th Cir. 2002). In this District, "specificity is not required when an ALJ's RFC finding and hypothetical are consistent with an 'at will' sit/stand option." Ruff v. Colvin, No. 1:12-CV-165-RJC, 2013 WL 4487502, at *7 (W.D.N.C. Aug. 20, 2013) (citing Thompson v. Astrue, 442 F. App'x 804, 807 (4th Cir. 2011). Moreover, "the reasonable implication of an ALJ's silence regarding the frequency of a claimant's need to alternate between sitting and standing is that the

sit/stand option is 'at-will,' 'as needed,' or otherwise at a claimant's own volition." Id. (citing Wright v. Astrue, No. 1:09CV0003, 2012 WL 182167, at *8 (M.D.N.C. Jan.23, 2012). An ALJ's reliance on improper VE testimony requires remand. Id. (citing English v. Shalala, 10 F.3d 1080, 1084–85 (4th Cir. 1993)).

The ALJ did not err in in posing his hypothetical. Without elaboration, the sit/stand that was properly presented to the VE in the hypothetical is subject to the reasonable implication that the hypothetical claimant could sit/stand at will. Greater specificity was not required for the hypothetical to "adequately represent" Plaintiff's RFC. Therefore, the ALJ's failure to specify the required frequency of alternation between sitting and standing does not necessitate remand.

Substantial evidence therefore supports the ALJ' RFC and hypothetical to the VE in that "sedentary" work adequately and accurately describes Plaintiff's ability to stand or walk for up to two hours. In addition, substantial evidence supported the ALJ's exclusion of Plaintiff's use of a cane and greater specificity with respect to Plaintiff's need to alternate between sitting and standing.

### C. Assessment of Credibility

Plaintiff contends that the ALJ failed to provide adequate explanation for finding Plaintiff's symptoms and limitations not credible. Specifically, Plaintiff first argues that the ALJ failed in his credibility determination by finding Plaintiff's claims of pain to be not credible when the ALJ subsequently credited the same claims by including a sit/stand option within the RFC. Additionally, Plaintiff contends that the ALJ erred in finding Plaintiff's part-time sporadic activities indicated Plaintiff could tolerate the physical and mental stress of working eight hours a day, five days per week.

As an initial matter, the Court recognizes that it is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility and whether the ALJ's decision is supported by substantial evidence. Id.

In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006). First, the ALJ must assess whether there is a medically determinable physical impairment that could reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that it could reasonably be expected to produce the symptoms or pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595. The ALJ may also consider other factors including the daily activities of claimant; the type, dosage, effectiveness, and side effects of any medication claimant takes in

order to alleviate the pain or symptoms; and any treatment other than medication that claimant received to alleviate the pain or symptoms.  20 C.F.R. § 404.1529(c)(3);  see also Aytch, 686 F. Supp. 2d at 605.

Here, the ALJ properly applied this two-step process in assessing Plaintiff's statements regarding his symptoms.  The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some of Plaintiff's alleged symptoms.  (Doc. 10-3, p. 20).  The ALJ then found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of each of the alleged symptoms as not credible when evaluated in accordance with Social Security Regulations 20 CFR 416.929 and SSR 96-7p.  (Id.)

The ALJ provided detailed and specific reasons for why he found Plaintiff's testimony not fully credible by appropriately accepting only Plaintiff's subjective complaints that were supported by the objective medical evidence.  (Doc. No. 10-3, p. 20).  In regards to Plaintiff's Buerger's disease, the ALJ explained that although Plaintiff did suffer from residual complications following her November 2011 left femoral bypass surgery, by May 2012, Plaintiff reported that the aching and weakness in her legs only caused moderate interference with her daily activities. (Doc. No. 10-3, p. 20).  The ALJ then noted that in December 2012, Plaintiff told her treating physician that she was doing well despite noted weakness and paresthesia.  (Doc. No. 10-3, p. 20).  Finally, the ALJ then provided its reasoning as to why it gave so much weight to Plaintiff's treating physician's November 2013 assessment in which the physician stated that Plaintiff would be capable of maintaining regular employment, although sedentary work would be necessitated by Plaintiff's physical limitations (Doc. No. 10-3, p. 20-21).   Although "isolated references in the physician's notes to 'feeling well' and 'normal activity' are not a substantial basis for rejecting . . . the claimant's subjective complaints of exertional limitation," 785 F.2d 1147, 1153 (4th Cir. 1986),

the ALJ cites to significantly more evidence to make his determination. Because the ALJ cited more than a scintilla of evidence, his credibility determination will not be disturbed.

Substantial evidence supports the ALJ's finding that Plaintiff's osteoarthritis was not consistent with her alleged symptoms of chronic pain. In regards to Plaintiff's osteoarthritis in her bilateral knees and shoulders, the ALJ found that Plaintiff's physical examination revealed no abnormalities beyond crepitus in her right knee and clicking in her left shoulder. (Doc. No. 10-3, p. 21). The ALJ explained that Plaintiff received little treatment for any impairments caused by her osteoarthritis. (Doc. No. 10-3, p. 22). Based on this substantial evidence, the ALJ concluded found that Plaintiff's alleged chronic pain as a result of Plaintiff's osteoarthritis was not credible.

The ALJ's finding that Plaintiff's degenerative disk disease was not consistent with the alleged intensity, persistence, and limiting effects was similarly supported by substantial evidence. The ALJ noted that although an MRI scan of Plaintiff's lower back confirmed that she suffered from degenerative changes in her lumbar spine and spinal stenosis, no evidence suggested that Plaintiff suffered from nerve root compression from the degenerative changes. (Doc. No. 10-3, p. 21). Additionally, the ALJ explained that although Plaintiff made complaints of lower back pain to her treating physicians, she received very little treatment for such pain during 2012 and 2013. (Doc. No. 10-3, p. 21). Therefore, the ALJ cited substantial evidence to support his finding that the intensity, persistence and limiting effects were not consistent with the all the available evidence of record.

Finally, substantial evidence contradicted Plaintiff's allegations of the intensity, persistence and limiting effects allegedly arising from Plaintiff's carpel tunnel syndrome. Considering Plaintiff's carpel tunnel syndrome, the ALJ found that although Plaintiff's medical records reveal a diagnosis of carpel tunnel syndrome, Plaintiff engaged in no documented

treatment for the syndrome. (Doc. No. 10-3, p. 22). Further, the ALJ went on to explain that Plaintiff's physical examinations during 2012 and 2013 do not reference any subjective weakness, numbness, or pain in her hands. (Doc. No. 10-3, p. 22). Therefore, the ALJ concluded, based on substantial evidence, that Plaintiff's subjective complaints as to intensity, persistence and limiting effects were not consistent with objective medical evidence.

Therefore, because the ALJ appropriately accepted only Plaintiff's subjective complaints that were supported by objective medical evidence, the ALJ's decision as to Plaintiff's credibility is supported by substantial evidence. The ALJ's decision will not be disturbed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 17) is GRANTED; and the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Signed: June 20, 2016

Frank D. Whitney
Chief United States District Judge